UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

In re:

SARA ANN EDMONDSON,

Debtor.

Case No. 23-20396

Chapter 13

Jerrold N. Poslusny, Jr.

### DECISION DENYING MOTION TO RECONSIDER

Sara Ann Edmonson (the "Debtor") moves the Court to reconsider (the "Motion") my June 11, 2024, order denying confirmation of her Chapter 13 plan. Dkt. No. 63. Creditor Lilliston Ford ("Lilliston") opposes, arguing that the Motion is frivolous, unfounded in fact or law, and that it does not meet the standard for a motion to reconsider. Dkt. No. 71. On July 15, the Debtor filed a reply (the "Reply"). Although the Reply was filed late, see D.N.J. LBR 9013-2(a)(3), I have considered it in reaching this decision. For the reasons discussed below, the Motion is denied.

### I.    Background

The parties are familiar with the history of their litigation, so I will not go into great depth here. Generally, the Debtor purchased a used vehicle from Lilliston in 2012. Disputes over the purchase led to years of litigation, which ultimately culminated in the United States District Court for the District of New Jersey determining that Lilliston was entitled to enforce a $144,000 judgment against the Debtor by executing on her real property. See Edmondson v. Lilliston Ford, Inc., 2023 WL 6890843, at *3 (D.N.J. Oct. 19, 2023) (Bumb, C.J.) (the "October Decision"). The Debtor filed her Chapter 13 petition on November 17, 2023. The Debtor's former counsel conceded this case was filed in an attempt to use the Bankruptcy Code's automatic stay in lieu of a stay pending appeal.[1] This Court twice found the Debtor's proposed Chapter 13 plans of

---

[1] The Debtor's counsel was allowed to withdraw on July 17, 2024. Dkt. No. 76. The Debtor filed and argued this Motion as a self-represented party.

1

reorganization were unconfirmable: first on January 17, 2024 (the "January Decision"), and again on June 11, 2024 (the "June Decision").[2] As discussed in the June Decision, Lilliston's judgment against the Debtor is final and not appealable.[3] The issues before the Third Circuit relate to the manner of execution of that judgment. See In re Edmondson, 2024 WL 2952149 (Bankr. D.N.J. June 11, 2024).

## II. Discussion

The purpose of a motion to reconsider "is to correct manifest errors of law or fact or to present newly discovered evidence." Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1985) (quoting Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir.1985)).

> Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.

Id. A motion to reconsider is not an opportunity "to re-litigate the very same issues that were raised or could have been raised in the prior proceedings." In re Mo, 650 B.R. 193, 211 (Bankr. D.N.J. 2023). "[T]he moving party must show more than 'mere disagreement with the court's decision and [a motion to reconsider] will only be granted if the moving party has provided the court with dispositive factual matters or controlling decisions of law which were overlooked." In re Sakhrani, 2006 WL 4451897, at *3 (Bankr. D.N.J. Feb. 24, 2006) (citations omitted).

---

[2] I incorporate by reference the October Decision, the January Decision and the June Decision.
[3] The Third Circuit affirmed the judgment against the Debtor on January 11, 2018. Edmondson v. Lilliston Ford Inc., 722 F. App'x 251, 252 (3d Cir. 2018). After further litigation, the District Court reaffirmed the judgment on June 24, 2021. Edmondson v. Lilliston Ford, Inc., 2021, WL 2651143, at *5 (D.N.J. Jun. 24, 2021). The October Decision determined that Lilliston could satisfy its judgment by executing on the Debtor's real property. Edmondson v. Lilliston Ford, Inc., 2023 WL 6890843, at *5. Only the October Decision is presently on appeal.

2

The Debtor has pointed to no intervening change in law, nor any new evidence, leaving only the possibility of an error of law or manifest injustice. The Motion appears to raise three arguments: (1) that I have some sort of conflict of interest; (2) that the June Decision was based on a prediction of the outcome of the Debtor's appeal; and (3) that in denying confirmation of her plan, I made an unlawful reversal of course. None of these arguments support granting the Motion.

Regarding the alleged conflict of interest, the Motion states that I "admitted that [I] had spoken with Judge Bumb . . . about this case prior to the Debtor's first appearance before this court on January 17, 2024, which presents a conflict of interest." Dkt. No. 68 ¶ 4. To support her position, the Debtor cites without explanation to Voda v. Cordis Corp., 476 F.3d 887 (Fed. Cir. 2007)). The issue in Voda was "whether a district court may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over infringement claims based on foreign patents." Voda 476 F.3d at 890. Voda does not have any bearing on the issue of an alleged conflict of interest.

Moreover, having reviewed the record, I found no evidence that I made such a statement. Even if I did, the Debtor has made no showing that such a statement demonstrates a conflict of interest. The Debtor has not alleged any facts to suggest I have any personal knowledge of the facts of this case, any prior affiliation with any of the parties, or any financial or familial interest in the case. More importantly, I am not aware of any of the above, and therefore, there is no conflict of interest.

The Debtor also alleges, again without any factual support, that this Court "is engaging in fraud, negligence and misconduct by acknowledging and predicting post judgment outcomes without citing post judgment remedies codified by the Congress and implemented by the US Supreme Court." Dkt. No. 68 ¶ 14 (citing Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)). The Debtor invokes Voda once more, as well as Jinks. v. Richland County, S.C., 538 U.S. 456

(2003). It appears the Debtor is arguing that I was improperly predicting the outcome of her appeal in not confirming her plan. But none of the cases she cites relate to the confirmation of a Chapter 13 plan or any other issue affecting this case. As discussed, Voda examines statutory supplemental jurisdiction on a matter of patent law. Gibbs discusses the requirement that for a district court to exercise pendent jurisdiction over state law claims, "[t]he state and federal claims must derive from a common nucleus of operative fact." Gibbs 383 U.S. at 725. In Jinks, the Supreme Court upheld a tolling provision of 28 U.S.C. § 1367 as a valid exercise of congressional power under the Necessary and Proper clause. Jinks 538 U.S. at 462. None of these cases relate to the Debtor's bankruptcy or the reasons confirmation was denied.

Furthermore, I did not predict the outcome of the Debtor's appeal in determining that the plan was not confirmable, I relied on the plan confirmation requirements set forth in section 1325 of the Bankruptcy Code. See Edmondson, 2024 WL 2952149. I concluded that the outcome of the Debtor's appeal has no bearing on confirming the plan because the judgment on which Lilliston's claim is based is final and not appealable. Id. at *2. The issues before the Third Circuit relate to whether Lilliston should be allowed to execute on the Debtor's real property to collect on its judgment, not the validity of that judgment.

Twice now the Debtor has proposed plans that could not be confirmed because they did not propose sufficient monthly payments. The Debtor makes arguments involving a turn of events in which she suddenly finds herself no longer owing Lilliston anything. The Debtor admitted that she filed her petition to use bankruptcy system to avoid seeking a stay pending appeal. As discussed in the January Decision, there is no per se rule prohibiting a party facing a large judgment from filing a bankruptcy petition to avail herself of the automatic stay. But once a party has done so, it must comply with the Bankruptcy Code. To date, the Debtor has not proposed such a plan.

The Debtor also seems to argue that I signaled that I would confirm her Chapter 13 plan if small changes were made, and that denying the modified plan in the June Decision shows some malign intent. The plan associated with the January Decision proposed to make payments of $200 per month to pay, among other things, the Debtor's attorney's fees and adequate protection to Lilliston while the appeal was pending. The January Decision denied confirmation because the proposed payment amount was not sufficient to pay her attorney's fees, or the Chapter 13 Trustee's commission, let alone provide Lilliston any amount of adequate protection. I also expressed doubt that the interest rate of the proposed adequate protection to Lilliston was appropriate. I did not make any determination whether adequate protection payments to Lilliston would ultimately be acceptable - that issue was left open for a subsequent plan. The January Decision gave the Debtor an opportunity to propose a modified plan rather than face immediate dismissal or conversion of the case.

The Debtor's next plan increased the monthly trustee payment to an amount sufficient to pay attorney's fees and Trustee commissions, but still proposed only adequate protection payments to Lilliston while her appeal in the Third Circuit was pending. The June Decision concluded that a plan proposing adequate protection payments was confirmable under the facts of this case and the requirements of the Bankruptcy Code. I granted the Debtor another opportunity to amend because the Debtor may be able to propose a confirmable plan. However, a plan that would allow the Debtor to keep her real property would likely require monthly payments roughly ten times the amount originally proposed, and five times what the Debtor proposed most recently. See Edmondson, 2024 WL 2952149 at *2-3.

In support of her position that the January Decision indicated I would confirm a plan with minimal changes, the Debtor simply makes things up. The Debtor refers to an order from this Court involving an escrow account. See Dkt. No. 68 ¶¶ 19-20 There is no order requiring an

5

escrow account, and even if there were it would have no bearing on any of the Debtor's arguments. The Debtor asserts that I overruled Lilliston's objections on plan confirmability. Id. ¶¶ 22-23. I never did so. The Debtor states that I concluded that Lilliston's judgment could be overturned. Id. at ¶ 25. I did not. Following those fabrications, the Debtor ends the Motion by citing Gibbs and Jinks which, once again, have nothing to do with the issues before me. As discussed above, the January Decision concluded that the proposed payments were not sufficient to fund a plan that would follow the Debtor's proposed course of action. I did not make any decision related to whether paying adequate protection to Lilliston was acceptable - that issue was reserved, and eventually decided in the June Decision.

Finally, as noted above, the Debtor filed the Reply late. The Reply once again cites to Gibbs and Jinks and cites a recent case in which the Supreme Court determined that section 3 of the Federal Arbitration Act mandates district courts referring suits to arbitration to stay proceedings, rather than dismiss them. Smith v. Spizzirri, 601 U.S. 472, 477 (2024). The Debtor argues that Spizzirri permits endless relitigation of already arbitrated disputes. It does not. In fact, Spizzirri, and Arabian Motors,[4] to which the Debtor also cites, change nothing for the Debtor. The Debtor's case was not dismissed after it was referred to arbitration, it was stayed, as Spizzirri requires. See Order That the Matter Shall be Stayed Pending Arbitration, Edmonson v. Lilliston Ford, Inc., 13-cv-07704-RMB-MJS (Jun. 22, 2014) (Dkt. No. 61). More importantly, these are all issues that could have and should have been raised during litigation in the District Court.

---

[4] Spizzirri resolved a circuit split, Arabian Motors Grp. W.L.L. v. Ford Motor Co., 19 F.4th 938, 942 (6th Cir. 2021), was one of the circuit level cases.

### III. Conclusion

For the reasons stated above, the Motion is denied. However, as noted at the hearing on July 16, 2024, the Debtor will be allowed fourteen days to file a further modified plan. If a modified plan is not timely filed, the Court will decide to either dismiss or convert the case, whichever is in the best interest of creditors. See 11 U.S.C. § 1307(c).

Dated: July 25, 2024

                                            JERROLD N. POSLUSNY, JR.
                                            U.S. BANKRUPTCY COURT JUDGE